OPINION
{¶ 1} Carl E. Turner, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found appellant guilty of kidnapping, in violation of R.C. 2905.01, a second-degree felony, and gross sexual imposition, a violation of R.C. 2907.05, a fourth-degree felony.
 {¶ 2} Appellant met Erma Jean Pride in May 2003, when he rented a car from a car rental agency at which Pride worked. Pride and appellant went on three dates, which included dinner at a restaurant, a movie, and dinner at Pride's home. On one occasion, appellant brought Pride lunch at work and kissed her on the lips. Pride later told appellant that the gesture was inappropriate, and the two shared no further physical intimacy.
 {¶ 3} On June 10, 2003, appellant asked if he could come to Pride's house that evening. Pride accepted, but told appellant to be there by 7:00 p.m. Appellant called Pride at approximately 9:40 p.m., and asked if he could still come over. After initially saying no, Pride agreed when appellant told her that he would not stay long. Pride testified that appellant arrived at her house at approximately 10:00 p.m. Pride testified that appellant entered her apartment, lay on the living room floor, and asked her to join him. Pride, who was sitting on a chair, said no and then got up to go into the kitchen. Pride testified that, as she passed appellant, he grabbed her by the arms and pulled her to the floor. He then got on top of her and pinned her down. Pride asked appellant several times to let her go and nudged him, but appellant would not get off of her.
 {¶ 4} While on top of her, appellant began talking about marriage and having children. He then grabbed her chin and, although she tried to turn her head away, appellant kissed her. Pride also testified that appellant touched her breasts. After approximately 20 minutes, appellant got off her; however, as she got up, appellant touched her vaginal area over her clothing. Once on her feet, Pride expressed her anger to appellant. Appellant then got up and lifted Pride over his shoulder, but Pride began to kick and scream, so he let her down. Pride ran out the front door and told appellant to leave. For one to five minutes, Pride commanded appellant to leave the house, and appellant eventually left.
 {¶ 5} After leaving, at 10:39 p.m., appellant called Pride and asked if he could return to pick up some papers he left there. Pride told him he had not left anything. He called again at 10:43 p.m., to make sure he had not left anything there. He called again at 11:08 p.m., but Pride did not remember this call at trial.
 {¶ 6} Pride then called her neighbor, Doreen, who did not answer her phone. She then called Theodore King, who came to her apartment. After hearing the story, King suggested they look on a government website to see if appellant had ever engaged in similar conduct. King found appellant's name and picture on the website for having committed a prior offense. Pride then called the police, and her friend Doreen came to the apartment.
 {¶ 7} Appellant was charged with kidnapping, a first-degree felony, and gross sexual imposition, a fourth-degree felony. On January 21, 2003, a bench trial was held. After the close of the state's case-in-chief, appellant moved for acquittal, pursuant to Crim.R. 29, which the court overruled. The court eventually found appellant guilty of second-degree kidnapping and gross sexual imposition. A sentencing hearing was held, at which the trial court sentenced appellant to four years incarceration for the kidnapping count and a concurrent sentence of one year incarceration on the gross sexual imposition count. Appellant was also later found to be a sexual predator. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
I. The trier of fact's decision was not supported by the evidence presented at trial and thus inequitable as against the manifest weight of the evidence, as well as insufficient to sustain a conviction of kidnapping and gsi beyond a reasonable doubt.
II. The prosecutor for the State of Ohio committed prosecutorial misconduct during closing arguments by making an improper statement of personal opinion and referred to facts that were not in evidence, which violated the defendant-appellant's constitutional rights.
III. The defendant-appellant was denied his right to effective assistance of counsel by trial counsel's numerous acts and omissions in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution.
IV. The trial court erred to the prejudice of the defendant-appellant in overruling appellant's motion for acquittal under Criminal Rule 29(a) since the state failed to satisfy its burden of proof on the charges.
 {¶ 8} We will address appellant's first and fourth assignments of error together, as they are related. Appellant argues in his first assignment of error that the trial court's decision was not supported by sufficient evidence and was against the manifest weight of the evidence. Appellant argues in his fourth assignment of error that the trial court erred in overruling his motion for acquittal pursuant to Crim.R. 29(A). Sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. With regard to the sufficiency of the evidence, to reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Sufficiency is a test of adequacy, a question of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386, citing State v.Robinson (1955), 162 Ohio St. 486. We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. Jenks, supra, at 273. We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the trier of fact. State v. Willard (2001), 144 Ohio App.3d 767, 777-778; citing State v. Millow (June 15, 2001), Hamilton App. No. C-000524. The same standard of review that is applied to a challenge to the sufficiency of evidence is also applied to a denial of a motion for acquittal pursuant to Crim.R. 29. Statev. Ready (2001), 143 Ohio App.3d 748, 759.
 {¶ 9} A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. Thompkins,
supra, at 387. Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court.State v. DeHass (1967), 10 Ohio St.2d 230, 231. After reviewing the entire record, with caution and deference to the role of the trier of fact, this court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the court, as the trier of fact, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Scott, 101 Ohio St.3d 31, 2004-Ohio-10, at ¶ 32. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. Thompkins, supra, at 387.
 {¶ 10} R.C. 2905.01 provides, in pertinent part:
(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
(4) To engage in sexual activity, as defined in section 2907.01
of the Revised Code, with the victim against the victim's will;
* * *
(C) Whoever violates this section is guilty of kidnapping, a felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree.
 {¶ 11} R.C. 2907.05 provides, in pertinent part:
(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
 {¶ 12} "Sexual activity," as defined by R.C. 2907.01(C), means "sexual contact" or "sexual conduct," or both. Here, no sexual conduct is alleged. Sexual contact is defined as any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B). R.C.2901.01(A)(1) defines "force" as any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.
 {¶ 13} With regard to the sufficiency of the evidence relating to both kidnapping and gross sexual imposition, appellant's sole contention as to why the evidence was insufficient is that the testimony of the state's witnesses, including Pride, lacked credibility and was inconsistent with statements given to the police. However, whether the evidence is legally sufficient is a question of law, not fact. Thompkins,
supra, at 386. Thus, in determining the sufficiency of the evidence, this court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. As such, the credibility of the witnesses is an issue primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, at ¶ 79.
 {¶ 14} In the present case, Pride's testimony provided sufficient evidence to prove the essential elements of both offenses. Pride testified that appellant pulled her to the floor by her arms as she walked by him. He then pinned her on the floor for 20 minutes. Pride attempted to nudge appellant off her and asked him to get off her, but he refused. Pride also testified that appellant groped her breasts over her clothes, forced her to kiss him by grabbing her chin, and then touched her vaginal area over her clothes after he allowed her to stand up. Pride also testified that, after she told appellant she was angry with him, appellant put her over his shoulder and started to take her toward the bedroom. Appellant only let her down when she kicked and screamed. Therefore, we find this testimony, when construed in favor of the prosecution, was sufficient to prove all of the elements of both kidnapping and gross sexual imposition beyond a reasonable doubt.
 {¶ 15} Appellant also claims the court's verdict relating kidnapping and gross sexual imposition was against the manifest weight of the evidence. Appellant argues that the verdict was against the manifest weight of the evidence because Pride's testimony was not credible. Appellant points to several claimed inconsistencies in Pride's testimony, and we address each in turn. Appellant first asserts that Columbus Police Officer Jeffrey Lipp's testimony that he did not call an ambulance to examine the victim, the lack of any bruises or marks on Pride's body, and Officer Lipp's testimony that nothing was out of place in Pride's apartment raises a question as to whether any physical force was used or a struggle took place. However, Pride's version of the events of that night would not have necessarily caused Pride any injuries, marks on her body, or items in her apartment to be out of place. Pride said that appellant touched her outside her clothing, grabbed her chin, put her over his shoulder, lay on her, and pulled her to the ground. Although it's possible that such actions could cause injury or leave marks, it is certainly not necessarily true. Also, none of these actions would have caused anything in her apartment to be in disarray, as most of the events between the two occurred while lying on the floor. Indeed, Pride specifically testified that there was not much of a struggle. She also testified that, although she kicked when appellant put her over his shoulder, there was no furniture around. Appellant also argues that Pride's testimony was not credible because Officer Lipp testified she was "fairly calm" when he arrived. However, the officer arrived two to three hours after the incident, and Pride had already talked to Doreen and King about the incident; thus, Pride would have had sufficient time to calm her emotions and regain her composure. Further, King testified that Pride was very scared on the phone and was very agitated and pacing when he arrived. He said he kept telling Pride to calm down. King testified that, by the time the police arrived, she was calm. Therefore, we find none of these circumstances raise any significant doubt as to Pride's veracity.
 {¶ 16} Appellant also asserts that Pride testified on direct examination that appellant never touched her breasts but, upon further direct examination, when she was provided her statement she made to police, she said that appellant did touch her breasts. It is true that Pride first testified that appellant did not touch her breasts but then testified, after having her memory refreshed by the police report, that he did, in fact, touch her breasts while he was still lying on top of her. However, the trial court found her testimony credible on this point. In fact, the trial court personally questioned Pride on the matter, and Pride reiterated that appellant touched her breasts. Without any other indication of dishonesty apparent in the record, we have no reason or basis to question the trial court's credibility determination and must conclude Pride simply did not remember such incident prior to having her memory refreshed.
 {¶ 17} Appellant also points out Pride testified that she went outside her front door and yelled at appellant to leave for approximately one minute, but Detective Jason Sprague testified that he interviewed multiple residents of the complex and vicinity, and nobody heard any yelling that night. However, the events of the evening would not have caused much noise. Pride testified that, when appellant was pinning her down, she spoke to him calmly so that he would not get upset and escalate his violence against her. As for appellant's contention that Pride went outside and yelled at appellant to leave, appellant fails to cite Pride's later testimony that she may have yelled "some," and that she was not really yelling as much as she was just telling appellant to leave.
 {¶ 18} Further, appellant contends that Pride's testimony that the two had dinner on the night of the incident for about two hours and then they talked for about one hour was inconsistent with her other testimony as to the timeline of events on the night in question. However, it is abundantly clear from the transcript that Pride was referring to a prior date with appellant when she spoke about the two-hour dinner and one-hour conversation. Therefore, there was no inconsistency in this respect.
 {¶ 19} Appellant also claims that Pride's actions after appellant left her apartment were inconsistent with her contentions that appellant had attacked her. Appellant first points out that Pride testified she talked to appellant on the phone at least two times immediately following the incident, which, appellant claims, is not consistent with somebody who was just attacked. We don't find the fact that Pride answered her cell phone to be inconsistent with her account of the evening. Pride testified that, when appellant called her, she told appellant she was angry about what had happened. Thus, it is clear her later phone conversations with appellant were not cordial. Appellant next points out that Pride did not immediately call the police, but waited for her friend King to show up, and then did not call the police until she and King found appellant's picture on the internet. However, we do not find it so implausible or abnormal so as to raise any credibility issues that Pride would have first sought comfort, security, and advice from close personal friends after being sexually assaulted. "Victims do not always act immediately following the commission of a crime. They are known to sometimes pause to contemplate whether they really want to initiate an investigation and criminal proceeding." State v. Williams (July 31, 1998), Montgomery App. No. 16687. Indeed, in the present case, Pride testified that, immediately after appellant left, she was confused and afraid, and she thought about what had happened and whether she had done something wrong or provoked appellant's behavior. She also said that she wanted to talk to a friend about what had just happened and get advice. She said King helped her assess the situation clearly and reassured her that it was not her fault. Especially in the case of sexual assault, it is not unusual for the victim to not immediately contact police for various reasons. See, e.g., State v. Sevayega, Cuyahoga App. No. 83392, 2004-Ohio-4909 (victim did not immediately report the rape to the police because she was initially embarrassed); Statev. Powe (May 2, 1991), Cuyahoga App. No. 58449 (victim explained that she did not call the police until a week after the incident because she was afraid of the defendant and was not thinking clearly). Accordingly, we do not believe Pride's actions after appellant left cast any significant doubt on the veracity of her testimony regarding the incident.
 {¶ 20} Further, appellant argues that King testified that Doreen came down to the apartment prior to the police coming, but Pride testified that she never talked to Doreen that evening. However, our review of the portion of Pride's testimony cited by appellant demonstrates that, when Pride stated she did not talk to Doreen, she meant she did not talk to Doreen on the phone. Thus, we find no inconsistency in this testimony. Therefore, after reviewing the record and weighing the evidence, we find there is competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt. The trial court found Pride and the state's other witnesses credible, and we find no reason to second guess the trier of fact. The trial court believed Pride's testimony and specifically found her credible, and we give great deference to its determination of credibility, as the trier of fact was in the best position to observe Pride's testimony, including her demeanor, voice inflection, and mannerisms. See State v. Cartagena, Franklin App. No. 02AP-459, 2002-Ohio-7355, at ¶ 26. The court did not clearly lose its way or create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's first and fourth assignments of error are overruled.
 {¶ 21} Appellant argues in his second assignment of error that the prosecutor committed prosecutorial misconduct during closing arguments by making an improper statement of personal opinion and referring to facts not in evidence. Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. Maggio v. Cleveland (1949),151 Ohio St. 136, 140; State v. Ballew (1996), 76 Ohio St.3d 244, 255. A prosecutor may freely comment on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. State v. Lott (1990), 51 Ohio St.3d 160, 165. Indeed, in our adversarial system, prosecutors are not only permitted but also encouraged to argue fervently for conviction.State v. Stephens (1970), 24 Ohio St.2d 76, 82. It is improper, however, for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14. The prosecution must also avoid insinuations and assertions which are calculated to mislead the jury. Id. at 15.
 {¶ 22} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Bey
(1999), 85 Ohio St.3d 487, 494; Smith, supra, at 14. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Bey, at 495. In determining whether the prosecutor's remarks were prejudicial, the state's argument must be viewed in its entirety. Ballew, at 255.
 {¶ 23} Appellant first objects to two statements made by the prosecutor during closing arguments. With regard to Ms. Pride, the prosecutor stated, "[t]hrough my job, I have a lot of victims I work with[,] and often times, those victims are cast in a poor light[.] It's very rare that I have a victim like Ms. Pride." With regard to appellant's co-worker, who testified as to if and when he saw appellant at work the night of the incident, the prosecutor stated: "I don't know about the court, I couldn't tell you what I was doing on June 10th, except I was working. I can't remember in detail what went on that day with a call out of the blue." Appellant maintains that these statements were improper because the prosecutor interjected his personal belief in comparing past cases that he handled to the present case.
 {¶ 24} However, in a bench trial, we presume that the trial court relied on only relevant, material, and competent evidence in arriving at its judgment absent a showing to the contrary.State v. Richey (1992), 64 Ohio St.3d 353, 357. After reviewing the closing arguments in the present case, even if the prosecutor's statements were improper, we can find nothing in the record that indicates the trial court was influenced by these comments. In fact, after the prosecutor made the statement regarding Pride, the trial court interjected, "[l]et's not go comparing your cases." The prosecutor responded, "[n]o, sir. I don't intend to compare cases, and I don't intend to make any — vouch for her integrity. I'm just stating from a standpoint as a prosecution [sic], motive is not something I have to prove." Therefore, we find no evidence that the trial court was improperly persuaded.
 {¶ 25} Appellant also maintains that the prosecutor misstated the facts of the case in that he stated, "[n]ow, there is [sic] indications that the defendant never told Ms. Pride he was married." Appellant argues that, in fact, there was no evidence presented that he was married. However, this statement was an accurate portrayal of the evidence. Pride replied "no" when she was asked by defense on cross-examination, "[d]o you know that Mr. Turner was married?" Although the prosecutor's statement implies that appellant was married, so did the question by the defense. Pride also answered "no" on re-direct examination when asked, "[h]e never told you he was married?" Thus, the prosecutor's statement was also consistent with this testimony. Regardless, after the prosecution made the above statement during closing arguments, the trial court interrupted and stated, "[o]n your first comment about he never told her he was married, there has been no evidence in this case that he was." The prosecutor indicated that he believed that there was evidence of such presented. The court then stated, "I don't think there was." Thereafter, the prosecutor said he would defer to the court's memory. Therefore, the record is clear that the trial court did not believe there was evidence presented that appellant was married, which is consistent with appellant's contention herein. Appellant can demonstrate no prejudicial error. Accordingly, appellant's second assignment of error is overruled.
 {¶ 26} Appellant argues in his third assignment of error that he was denied effective assistance of counsel by his trial counsel's numerous acts and omissions. An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below the objective standard of reasonable representation and that the defendant was prejudiced as a result. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.State v. Johnson (1988), 39 Ohio St.3d 48, 60.
 {¶ 27} We will address each of appellant's contentions in turn. Appellant first argues that he was denied effective assistance of counsel because his counsel failed to properly prepare his only defense and alibi witness, Timothy Terry, appellant's co-worker. Appellant maintains that his counsel did not properly prepare Terry because he could not remember the exact timeline of appellant's appearance and departure from work on the evening or early morning following the offense, and he did not produce any evidence to bolster his testimony, such as time records, sign-in cards, or a calendar. However, we first note that there is no evidence in the record as to what steps defense counsel took to prepare Terry; thus, appellant's contention that he was inadequately prepared is conjecture. Further, Terry's failure to remember the specific timeline on the night in question was not necessarily the result of defense counsel's failure to properly prepare him for trial. Terry testified that the only schedule he kept was an informal personal calendar, and he admitted that his records on the calendar were not necessarily accurate. In addition, there is no evidence that Terry would have remembered the events any clearer if defense counsel had prepared him more thoroughly prior to trial, thereby making any claim of prejudice purely speculative. The defendant must demonstrate more than vague speculations of prejudice to show that counsel was ineffective. State v. Otte (1996), 74 Ohio St.3d 555, 565. Appellant speculates but cannot demonstrate that any additional testimony of Terry would have been favorable to him. This court will not sustain an ineffective assistance of counsel claim based on pure speculation as to what a witness might have said at trial. See State v. Stalnaker, Summit App. No. 21731,2004-Ohio-1236, at ¶ 8-9. Also, although Terry supposed that, perhaps, appellant's employer kept some sort of record as to when its employees worked, there is no evidence that such evidence actually does exist. For these reasons, we cannot find that appellant's counsel was deficient in this respect.
 {¶ 28} Appellant next argues that his counsel failed to object to questions that elicited hearsay from Officer Lipp and Detective Sprague regarding Pride's statements to him. However, the trial court specifically stated it was not using Officer Lipp's or Detective Sprague's hearsay testimony on such issue for the truth of the matter asserted. Although appellant claims the trial court did, in fact, use the testimony for the truth of the matter asserted, he fails to provide any evidence of such. Further, because Pride testified directly as to the same matters testified to by Officer Lipp, any improper testimony was cumulative of matters properly before the court, and appellant was not prejudiced by that testimony. See State v. Tomlinson
(1986), 33 Ohio App.3d 278, 281 (any error in the admission of hearsay is generally harmless when the declarant is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature). Thus, as appellant has failed to demonstrate any prejudice as a result of his counsel's failure to object to this testimony, this argument is without merit.
 {¶ 29} Appellant next asserts his counsel was deficient in failing to object to the comments and misstated facts made by the prosecutor in his closing arguments. However, we have already addressed this contention in appellant's previous assignment of error, and, accordingly, we find no prejudice by defense counsel's failure to object.
 {¶ 30} Further, appellant argues his counsel was deficient in failing to object to the testimony of Detective Sprague regarding the contents of the police report. However, the trial court stated on the record at the time of Detective Sprague's testimony that the testimony was hearsay and probably not admissible. Further, as this was a bench trial, it must affirmatively appear that the court relied on such testimony in arriving at its verdict in order for such error to be grounds for reversal. SeeState v. Whitt (1991), 68 Ohio App.3d 752, 758, citing Statev. White (1968), 15 Ohio St.2d 146, at paragraph two of the syllabus. Here, appellant has not pointed to any reference demonstrating the trial court relied on this evidence. In fact, the trial court stated on the record that the police report itself, while admissible, did not constitute evidence. As such, we find no prejudice resulted from defense counsel's failure to object to Detective Sprague's testimony or the admission of the police report.
 {¶ 31} Appellant also claims that his counsel's deficiency was demonstrated by his counsel's "rambling," "incoherent," "illogical," and "disorganized" closing argument. We disagree with appellant's characterization of the closing argument and find it was not deficient. For these reasons, appellant's third assignment of error is overruled.
 {¶ 32} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Klatt, JJ., concur.