JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Russell Boyd appeals from his convictions for multiple counts of gross sexual imposition, rape, kidnapping, and attempted rape. For the reasons set forth below, we affirm.
 {¶ 2} On June 12, 2003, defendant was indicted pursuant to a thirty-four count indictment in connection with alleged attacks on "Jane Doe,"[1] who was born in 1985. Defendant was charged with eight counts of rape with sexually violent predator specifications, twenty counts of rape with furthermore clauses alleging force and sexually violent predator specifications, one count of kidnapping with sexual motivation and sexually violent predator specifications, and five counts of attempted rape with furthermore clauses alleging force and sexually violent predator specifications. Defendant pled not guilty and the matter proceeded to a jury trial on February 26, 2004.
 {¶ 3} As trial commenced, the state amended the eight rape charges which did not contain sexually violent predator specifications to charges of gross sexual imposition. The state further amended the indictment to allege that the attacks occurred from December 9, 1993 until December 8, 1998, and not December 1998 to 2000 as originally charged.
 {¶ 4} Doe, who was eighteen years-old at the time of trial, testified that when she was six years-old, she went to live with her grandparents. Doe's mother was in prison and her father was sent to prison a short time later. Doe's uncles, including defendant and Donald Boyd, and Doe's sister and cousins also lived in the same home.
 {¶ 5} According to Doe, beginning when she was eight years-old, defendant would take her from her bedroom and bring her downstairs to the dining room where he slept. He rubbed her vagina, forced her to rub his penis, and put his penis in her mouth. He also performed oral sex on her, resulting in vaginal penetration.
 {¶ 6} Doe testified that she told her grandmother what had happened and her grandmother spoke to defendant but the abuse continued. Doe further reported that her grandfather had also molested her and her grandmother walked in while it was happening but did nothing.
 {¶ 7} Doe stated that she was afraid of defendant, and that she felt that she had to comply with his demands. According to Doe, defendant molested her several times a week from the time she was eight until the time she was thirteen. She estimated that he performed oral sex on her approximately twenty-five times, that he put his hands on her vaginal area "just about every night," and that he sometimes required her to rub his penis. She stated that on several occasions, defendant tried to insert his penis into her vagina but she kept her body rigid so that he could not penetrate her.
 {¶ 8} In 1999, when she was thirteen, Doe told school security guard Debra Benton about the abuse. Benton contacted the county's child abuse hotline. Thereafter, Doe went to live with her cousin Tameka, and defendant and Uncle Donald were removed from her grandmother's home. Later, after Doe's grandmother left Doe's young sister alone with another male family member, Doe told another school counselor that defendant molested her, then reported the matter to Cleveland Police Officer Donnie Hooks.
 {¶ 9} On cross-examination, the girl denied that she was upset with defendant for disciplining her. She also stated that she could not lock her bedroom door because the door did not have a doorknob for several years, and later, her grandmother prohibited her from locking the door.
 {¶ 10} Debra Benton testified that she worked as a security guard at Mary B. Martin Middle School beginning in 1993 or 1994. One morning, as the children entered the building, Benton spotted Doe and noticed that she looked troubled. Benton asked the girl what was wrong. They walked to the teacher's lounge to talk, and Doe reported that one of her uncles was trying to have sex with her.
 {¶ 11} Benton further testified that she reported the incident on the county's child abuse hotline. The operator assured Benton that a social worker would go to the girl's home that night. The following morning, Benton asked Doe whether anyone had gone to her home to speak to her, and Doe indicated that no one had. Benton called the hotline again, and the operator assured her that someone would be out to speak with Doe. Benton later learned that a social worker had met with Doe. Benton did not speak with police about the matter.
 {¶ 12} Sonnia Draper, a social worker with the Department of Children and Family Services, testified that in October 1999, she investigated the matter and implemented a safety plan for the family. Pursuant to the safety plan, defendant was to move from the home and he and Donald Boyd were to have no unsupervised contact with the girls in the house. The family was then to report to Bellefaire for incest counseling. Defendant, Donald Boyd, and the girl's grandmother signed the safety plan. The matter was to be referred to the Cleveland Police Department but Draper could not recall what, if any, follow-up was undertaken.
 {¶ 13} Cleveland Police Officer Donnie Hooks testified that he met with Doe, Doe's boyfriend, and a school counselor at Lincoln West High School. According to Officer Hooks, Doe related that defendant had repeatedly touched her in an inappropriate way, and had attempted to have intercourse with her. Doe also expressed concern for her younger sister who was living in the same house as defendant. Finally, Officer Hooks testified that Doe was crying, and shaking and seemed terrified.
 {¶ 14} Cleveland Police Detective Christina Cottom testified that the Department of Children and Family Services did not refer the 1999 allegations to the police, and if the department had done so, the police would have investigated. At the time Cottom became involved, Doe was living in a group home with other juveniles. Cottom interviewed Doe and other family members. She attempted to interview defendant but he had moved. Doe's grandmother told Cottom that she knew that her husband had molested the girl but that she was unaware of the other allegations.
 {¶ 15} Cottom admitted on cross-examination that Doe's statement to police contains allegations that two other family members had molested her. Cottom also admitted that Donald Boyd admitted to molesting Doe.
 {¶ 16} Defendant elected to present evidence. Marjorie Boyd, the mother of defendant and the grandmother of Doe, denied that Doe spoke to her about defendant's conduct and testified that she first learned of Doe's allegations from county social workers. Boyd told the social workers that Doe made up the allegations in retaliation for defendant disciplining her. According to Boyd, defendant did not continuously reside in her home while Doe lived there, and when he did, he slept in a third floor bedroom.
 {¶ 17} Defendant was convicted of all eight amended charges, all of the rape charges and specifications, the kidnapping charge and specifications, and two of the charges of attempted rape with specifications. The trial court sentenced defendant to concurrent three-year terms of imprisonment on the gross sexual imposition charges, mandatory life terms on the rape charges, and concurrent six-year terms on the remaining offenses. The court also determined that defendant is a sexually violent predator. Defendant now appeals and assigns two errors for our review.
 {¶ 18} Defendant's first assignment of error states:
 {¶ 19} "The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction."
 {¶ 20} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. A Crim.R. 29(A) motion for acquittal "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394; State v. Jordan, Cuyahoga App. Nos. 79469 and 79470, 2002-Ohio-590.
 {¶ 21} The standard for a Rule 29 motion is virtually identical to that employed in testing the sufficiency of the evidence. State v.Turner, Franklin App. No. 04AP-364, 2004-Ohio-6609, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins, supra.
 {¶ 22} In this matter, Doe testified that, beginning when she was eight years-old, defendant would bring her to his sleeping area in the dining room, touch her vagina, have her rub his penis, and put his penis in her mouth. He also performed oral sex on her, resulting in vaginal penetration. Doe testified that defendant attempted to have vaginal intercourse with her but she prevented him from penetrating her. Finally, Doe testified that the abuse occurred several times a week and continued until she turned thirteen years-old. School security guard Debra Benton testified that the girl reported the abuse to her in 1999. The matter was referred to the Department of Children and Family Services and defendant, Marjorie Boyd and Donald Boyd, signed the county's safety plans for the family which provided, inter alia, that defendant would move and not have supervised contact with Doe. From the foregoing, we hold that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The state's evidence was sufficient to convince the average mind of the defendant's guilt of the charges beyond a reasonable doubt and trial court properly denied defendant's motion for acquittal.
 {¶ 23} The first assignment of error is without merit.
 {¶ 24} Defendant's second assignment of error states:
 {¶ 25} "Appellant's conviction was against the manifest weight of the evidence."
 {¶ 26} In State v. Thompkins, supra, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 27} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 28} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbsv. Florida (1982), 457 U.S. 31, 45, 102 S. Ct. 2211, 2220, 72 L. Ed.2d 652,663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.
 {¶ 29} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 30} In this matter, we conclude that the jury did not lose its way in convicting defendant of the charges. Doe testified convincingly regarding the molestation, and the record establishes that Doe reported the matter to a school guard, that the Department of Children and Family Services opened a file and devised a safety plan for the family in which defendant agreed to move and not have unsupervised contact with Doe. Defendant's contention that Doe had fabricated the accusations in retaliation for defendant having disciplined her was not credible in light of the agreed safety plan, and the admitted pattern of abuse occurring in this family.
 {¶ 31} The second assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Corrigan, J., concur.
[1] On April 4, 2001, this Court adopted a policy of refraining from naming child crime victims. We adhere to that policy herein and encourage the parties to consider such concerns.