OPINION
{¶ 1} Defendant-appellant, Donald L. Boyer, appeals from a judgment of conviction and sentence answered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding appellant guilty of nine counts of gross sexual imposition, two counts count of rape by cunnilingus, and one court of rape by fellatio.
 {¶ 2} The Franklin County Grand Jury indicted appellant on the 12 counts for which he was convicted and an additional count of rape by vaginal intercourse, for which he was acquitted. The stated victim for all counts was E.D., who was between six and eight years old during the different periods for each offense or group of offenses alleged in the indictment. The victim is appellant's niece, the daughter of appellant's wife's sister.
 {¶ 3} E.D. was ten years old at the time of trial. She testified that the sexual conduct occurred in several rooms of appellant's home. E.D. testified that she made frequent overnight visits to appellant's house. At times, when they were watching TV or playing in a computer room, which initially was located upstairs and later moved to the basement, appellant would put his exposed penis on her "butt" beneath her underwear when E.D. was sitting in appellant's lap. (Tr., Vol. II, at 21-22, 45.) On other occasions, appellant would take E.D. into a basement storage room, and hold her upside down and "bite" her "private." (Tr., Vol. II, at 27-34, 36-38.) Appellant's penis would be exposed when he did this and he would try to insert it in E.D.'s mouth, although he did not succeed in doing so. E.D. also testified that sometimes during the sleepovers she would awake to find that her pants had been unzipped or unbuttoned while she was asleep. E.D. further testified that often her older sister would be present and that appellant would take advantage of the older sister leaving the room to begin his advances.
 {¶ 4} E.D.'s mother testified that she moved her family to Columbus, Ohio, in 1997, occupying a home close to that of her sister and appellant. E.D. and her older sister began spending the night with appellant and his wife at their residence on weekends once or twice a month. When E.D. was six years old, her mother noticed changes in her daughter's behavior, such as weight gain and compulsive chewing on clothing and hair. E.D. would demonstrate anger towards family members and avoided hugging appellant or his wife. E.D. eventually told her mother that she wanted her uncle to "stop," but refused to explain what she meant. E.D.'s mother was eventually able to elicit more information about appellant's conduct and took E.D. to Children's Hospital for a child-sex victim evaluation.
 {¶ 5} E.D.'s sister, N.D., testified and largely corroborated her sister's account of their frequent visits and sleepovers at appellant's home. She stated that often times they would play video games, and that N.D. would go to sleep and her sister would continue to play video games with appellant. N.D., who is five years older than her sister, specifically described an incident in which she was sleeping in the same room as her sister, and awoke to find appellant and E.D. lying next to each other with a sheet or blanket over them. When appellant realized that N.D. had awoken, appellant, who was wearing only boxers, hastily got up and went to sit in a nearby chair. N.D. did not report the incident to anyone because she was "afraid of how he would react." (Tr., Vol. II, 109.) Like her mother, N.D. noticed a change in E.D.'s behavior around this time, particularly on one occasion when the family went to the grocery store where appellant worked and E.D. refused to go inside.
 {¶ 6} Appellant testified on his own behalf and denied all allegations of sexual misconduct. Appellant's wife testified that she heard or observed nothing unusual during visits by her nieces, and got up frequently to check on the girls when they spent the night. Appellant conceded that there were frequent periods from 2001-2004, when he was alone with E.D.
 {¶ 7} The jury returned a verdict of not guilty of vaginal rape alleged in Count 1 of the indictment, but guilty of all counts of gross sexual imposition and rape based on oral genital contact in the remaining counts. The court sentenced appellant to a term of life imprisonment on Count 5 (rape) of the indictment, six years incarceration on Counts 6 and 10 of the indictment (rape) and three years each on the remaining nine gross sexual imposition counts. The rape sentences were to be served consecutively, with the gross sexual imposition sentences to be served concurrently. After a further hearing, appellant was adjudicated a sexual predator.
 {¶ 8} Appellant has timely appealed and brings the following five assignments of error:
 I. The Trial Court by amending Counts 5, 6 and 10 at the conclusion of the State's case to expand the alleged dates contained in the Indictment and Bill of Particulars to a 30 month period from July 2001 to December 2003 and therein refusing to grant a mistrial deprived the Defendant of a fair trial and violated his State and Federal Constitutional Rights to due process of law and consideration by a grand jury.
 II. The Trial Court, by admitting State's Exhibit 13 The Medical Forensic Interview Summary of the Child Assessment Center containing the results of an interview of the alleged victim, deprived the Defendant of his right of Confrontation and due process under State and Federal Constitution.
 III. The findings of guilty on Counts 2 through 13 are not supported by the evidence required by law. IV. The findings of guilty on Counts 2 through 13 are against the manifest weight of the evidence.
 V. The findings of the Trial Court that Defendant is a sexual predator is not supported by clear and convincing evidence as required by law.
 {¶ 9} Appellant's first assignment of error asserts that the trial court erred in permitting amendment, after the state had rested, of the timeframe set forth in the indictment for the rape counts in the indictment (5, 6 and 10) to a wider time period to conform to the evidence adduced at trial. As framed in the indictment, Count 5 alleged conduct occurring between March 29 and June 12, 2002. Count 6 alleged conduct occurring between June 13, 2002 and March 28, 2003. Count 10 of the indictment alleged conduct occurring between March 29 and December 1, 2003. As amended at trial, all three counts alleged conduct occurring between July 1, 2001 and December 1, 2003, when the victim was between the ages of six and eight.
 {¶ 10} Crim. R. 7(D) allows for amendment of an indictment at any time before, during, or after trial:
 (D) Amendment of indictment, information, or complaint. The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.* * *
 {¶ 11} In addressing the propriety of an amendment under this provision, courts have stated that the essential purpose of the indictment is to compel the government to aver all material facts alleged to constitute the essential elements of the offense, and thereby afford the accused adequate notice of the charges and an opportunity to defend himself against them. State v. Sellares (1985),17 Ohio St.3d 169. A precise time and date of an alleged offense are ordinarily not essential elements, and the failure to provide such specific times and dates in the indictment will not of itself provide a basis for dismissal of the charges. Id. at 172. It is axiomatic that in cases involving sexual misconduct with a young child, precise times and dates of the conduct or offenses often will not be determined. State v. Barnecut
(1988), 44 Ohio App.3d 149. The inability of the state to produce such specific chronological information is without prejudice to the defendant provided that failure to allege or prove specific times and dates does not establish a material deterrent to the preparation of the defense. Id.
 {¶ 12} If the evidence ultimately establishes a variance between the dates alleged in the indictment and the evidence adduced at trial, the prosecution or court may amend the indictment pursuant to Crim. R. 7(D) to conform to the evidence offered in the state's case-in-chief.State v. Koelling (Mar. 21, 1995), Franklin App. No. 94AP-866. A defendant seeking reversal of his conviction based upon such an amendment by the trial court must show both an abuse of discretion on the part of the trial court in amending the indictment and resulting prejudice to the defense. State v. Beach, 148 Ohio App.3d 181,2002-Ohio-2759, at ¶ 23.
 {¶ 13} Appellant specifically argues in the present case that prejudice ensued because the victim described many of the incidents as occurring in or near the computer room in the basement of appellant's house, and this room did not exist during the periods alleged in the indictment for the rape counts.
 {¶ 14} Although we will address the other evidence of the offenses heard at trial under appellant's other assignments of error, we note that the timeframe alleged by the state after indictment did not alter the characteristics of the offenses in other respects, particularly the age of the victim or the general circumstances under which the crimes occurred. The specific circumstance that some of the alleged locations described by the victim concededly did not comport with some of the timeframes alleged in the indictment is not sufficient to demonstrate material prejudice to the defense by the amendment of the indictment to modify those timeframes. The indictment generally set forth a course of conduct constituting multiple offenses over a long time period, and it is difficult for the defense to now assert that the sole fact that some offenses could not have occurred in some locations during a portion of the times alleged demonstrates that appellant "has demonstrated that a more specific date was material to the presentation of his defense."State v. Daniel (1994), 97 Ohio App.3d 548, 558. See, also, State v.Hensley (1991), 59 Ohio St.3d 136, 142 (child victims and residents of trailer park where defendant resided and worked as maintenance person had sufficiently frequent contact with defendant that specific dates were not material to any defense theory put forth at trial).
 {¶ 15} Appellant did not present an alibi defense for specific offenses occurring at specific dates. Moreover, E.D.'s testimony did not limit the allegations of improper sexual contact to events occurring in or near that room, even if her testimony regarding acts constituting rape are described as taking place there. The jury was free to give credence to E.D.'s testimony regarding the acts she endured while making allowance for some imprecision in chronology. If the non-existence of the room in question establishes that the rape offenses could not have taken place in that room at the times initially alleged, it would not necessarily follow that the acts never took place at all, particularly since they fell within the overall timeframe described by the victim and the indictment with respect to other offenses. The defense cannot argue that exclusion of one partial timeframe with respect to the location of certain specific acts during a long period in which multiple offenses are alleged in multiple locations would constitute a viable defense over the entire time period.
 {¶ 16} In summary, we find that appellant has failed to demonstrate that the amendment pursuant to Crim. R. 7(D) materially prejudiced the defense, or warranted dismissal or retrial on the charges in question. Appellant's first assignment of error is accordingly overruled.
 {¶ 17} Appellant's second assignment of error asserts that the court's admission of the medical forensic interview summary prepared during the victim's assessment at Children's Hospital violated appellant's right to due process and his right to confront witnesses under theSixth Amendment to the United States Constitution and the Tenth Amendment to the Ohio Constitution.
 {¶ 18} Under Crawford v. Washington (2004) 541 U.S. 36,124 S.Ct. 1354, a testimonial, out-of-court statement offered against an accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the accused has a prior opportunity to cross-examine the witness. Crawford, however, further states that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Id. at 59 fn. 9, citing California. v.Green (1970), 399 U.S. 149, 162, 90 S.Ct. 1930. The intake summaries introduced at trial included purported statements taken from the victim's mother and statements made by the victim herself. Both witnesses testified at trial, so that Confrontation Clause questions regarding their out-of-court statements are, pursuant toCrawford, not applicable in the present case. See State v. Jordan,
Franklin App. No. 06AP-96, 2006-Ohio-6224, at ¶ 23, 24. Appellant's second assignment of error is accordingly overruled.
 {¶ 19} Appellant's third assignment of error assets that appellant's conviction is supported by insufficient evidence. Appellant's fourth assignment of error asserts that the conviction is against the manifest weight of the evidence. We will address these two assignments of error together.
 {¶ 20} The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. State v. Thompkins
(1997), 78 Ohio St. 3d 380, 386, 678 N.E.2d 541. As to sufficiency of the evidence, '"sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., citing Black's Law Dictionary (6 Ed. 1990) 1433. A determination as to whether the evidence is legally sufficient to sustain a verdict is a question of law.Thompkins, at 386. The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."Jackson v. Virginia (1979), 443 U.S. 307, 99 S. Ct. 2781, 2789,61 L. Ed. 2d 560 (emphasis sic). A reversal based on insufficient evidence has the same effect as a not guilty verdict because such a determination "means that no rational factfinder could have voted to convict the defendant." Tibbs v. Florida (1982), 457 U.S. 31, 102 S. Ct. 2211, 2218,72 L. Ed. 2d 652.
 {¶ 21} As opposed to the concept of sufficiency of the evidence, the court in Thompkins noted that "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."Thompkins, at 388, quoting Black's, supra, at 1594.
 {¶ 22} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id, at 387. An appellate court should reverse a conviction as against the manifest weight of the evidence in only the most "exceptional cases in which the evidence weighs heavily against conviction," State v. Martin (1983),20 Ohio App. 3d 172, 175, instances in which the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 23} In support of this assignment of error, appellant argues that the testimony did not establish that the conduct allegedly constituting gross sexual imposition occurred within the timeframe of the indictment, which was not amended as to those counts. Appellant further argues that the conduct allegedly constituting cunnilingus or fellatio was insufficient to fulfill the elements of the crime of rape because there was no testimony that the victim's clothing was removed, her vaginal area ever exposed directly to appellant's mouth, or that his penis actually contacted or penetrated her mouth.
 {¶ 24} The most pertinent parts of E.D.'s testimony on this last question was, contrary to appellant's assertions on appeal, fairly explicit on the question of physical contact and supports the jury's verdict:
 Q. What happened in there?
 A. He would put me upside down and try and make me put his privates in my mouth, but i would turn away. and then he would bite my privates, but he would hold on to my stomach so i wouldn't fall or anything.
 Q. When you say he would hold on to you, how did that work? i don't understand. can you explain it?
 A. Like he would put — turn me upside down and then hold me like right here.
 * * *
 Q. And then what happened when you were upside down?
 A. He would try and put his privates in my mouth but i would look away. and then he would bite my privates, but my clothes would still be on.
 * * *
 Q. And how was his private able to come near your mouth?
 A. Because he was — when he was holding me upside down my head would look straight down and then like it would be out so i would turn my head.
 Q. How would they be out? were his clothes on?
 A. Yes.
 Q. And how would the private be able to be out of the clothes?
 A. He like took it out of his underwear and his sweats and then put it out.
 Q. And i'm sorry, put it where?
 A. Put it outside of his sweats and underwear.
 Q. But kept his clothes on?
 A. Yes.
 Q. And did his private touch your face?
 A. Yes.
 Q. Did it touch your mouth?
 A. Sometimes.
(TR. II, 27.)
 {¶ 25} Penetration of the victim's mouth is not a required element of fellatio rape. State v. Long (1989), 64 Ohio App.3d 615. Similarly, this court has concluded that "the statute clearly does not require penetration to complete the act of cunnilingus. Courts have also found that the law does require penetration and requires no further activity beyond the placing of one's mouth on the female's vagina."State v. Poe (Oct. 24, 2000), Franklin App. No. 00AP-300, citingState v. Bailey (1992), 78 Ohio App.3d 394, 395. While no case specifically examines the circumstance of some clothing covering the child's genital area in a child rape case such as this one, we find no difficulty in concluding that "biting" the child's genitals, whether through her underwear or not, under these circumstances is sufficient to establish mouth-to-genital contact supporting a finding of cunnilingus rape.
 {¶ 26} With respect to cunnilingus and fellatio, the Supreme Court of Ohio has held that, unlike vaginal or anal rape, the statute must be interpreted to require that more than mere contact is required, and the state must show that sexual gratification or oral stimulation were proven. In re M.D. 1988, 38 Ohio St.3d 149, 152. The existence of sexual gratification or motivation may be discerned from the type, nature, and circumstances of the contact. State v. Uhler (1992), 80 Ohio App.3d 113,123. The jury in this case was clearly entitled to conclude from the victim's description of appellant's actions in holding her upside down, placing his bared penis before and against her mouth and biting her genital area that no other conceivable purpose could have motivated appellant's actions.
 {¶ 27} With respect to the timeframes for the gross sexual imposition counts, E.D.'s testimony established that on frequent occasions, both before and after the "computer room" in which many acts took place was moved from one part of the house to another, appellant frequently engaged in sexual contact with her other than the conduct forming the basis for the cunnilingus and fellatio rape accounts. E.D. testified that appellant would place her in his lap when they were playing video games and insert his naked penis into her clothing, placing it in direct contact with the bare skin of her buttocks, rectal area and genitals. E.D. testified that this conduct occurred almost every time she visited, and that she was visiting her aunt and uncle on two or more weekends a month. The timeframes alleged in the indictment's gross sexual imposition counts, which break offenses down to periods when E.D. was age six, seven, and eight, are not chronologically deficient, as the jury could reasonably infer that conduct occurred in the various rooms described by the victim during the various years alleged in the indictment. This is all the more reasonable an inference when, as here, the allegations of sexual abuse against a child involve a repeated course of conduct over an extended period of time. State v.Draughon, Franklin App. No. 02AP-895, 2004-Ohio-320, ¶ 87;Bamecut, supra.
 {¶ 28} In summary, we find that based upon the evidence heard at trial there was sufficient evidence under which a rational fact finder could have convicted appellant, and no indication that the jury clearly lost its way or created a manifest miscarriage of justice in light of conflicting evidence. Appellant's third and fourth assignments of error are accordingly overruled.
 {¶ 29} Appellant's fifth assignment of error asserts that his adjudication as a sexual predator under R.C. 2950.01(E) is not supported by clear and convincing evidence. Specifically, appellant asserts that the state presented no evidence at the sexual predator classification hearing beyond the trial transcript. In opposition, the defense presented the testimony of a clinical psychologist, Dr. Thomas Paulucci, who testified that after evaluation of appellant through an MMPI-2 assessment and a statistical review of the case in comparison with comparably situated offenders he believed that appellant did not represent a likelihood of reoffending.
 {¶ 30} A sexual predator is defined as a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C. 2950.01(E). Because appellant was convicted of rape, and rape is a sexually oriented offense, the issue becomes whether the state has proved, by clear and convincing evidence, that appellant is likely to engage in future sexually oriented offenses.
 {¶ 31} "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases." Cross v. Ledford (1954), 161 Ohio St. 469, 477. This court will not reverse a trial court's adjudication of a defendant as a sexual predator as against the manifest weight of the evidence or supported by insufficient evidence if there exists some competent, credible evidence going to all the essential elements of the case to support that judgment. State v. Ibrahim, Franklin App. No. 03AP-900,2004-Ohio-4220. In making its determination, the trial court will assess statutorily outlined factors in R.C. 2950.09(B)(3). These factors comprise inter alia the age of the victim and the nature of the offender's conduct, including whether it was part of a demonstrated pattern of abuse, and any additional behavioral characteristics.
 {¶ 32} The evidence presented by Dr. Paulucci was principally statistical in nature, predicting the likelihood of reoffending based upon the statistical assessments of past offenders. Sexual predator adjudications hearings, however, are fact specific and must be analyzed by a case-by-case basis. State v. Clary (Oct. 12, 2000), Franklin App. No. 99AP-1465. A trier of fact is free to give credence to or disregard testimony presented by the defendant at such a hearing, and "expert testimony, even when uncontradicted, is not necessarily conclusive. "Ibrahim, at ¶ 23, quoting State v. Brown (1983), 5 Ohio St.3d 133, 135.
 {¶ 33} Based on the record before us, the court had before it a convicted defendant who according to the victim had engaged over a course of years in a pattern of systematic sexual molestation. The victim was between the ages of six and eight at the time of the crimes, and was the defendant's niece. A court may note that an offender engaging in incestuous molestation of extremely young children presents a high likelihood of reoffending, as such conduct demonstrates a profound disregard for universally accepted social norms. State v.Daniels, (1998), Franklin App. No. 97AP-830. Based on these facts, we can only conclude that the trial court did not err in finding that there was clear and convincing evidence to support adjudication of appellant as a sexual predator who was likely to commit comparable offenses in the future. Appellant's fifth assignment of error is accordingly overruled.
 {¶ 34} In accordance with the foregoing, appellant's first, second, third, fourth and fifth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed. PETREE and SADLER, JJ., concur.