OPINION
{¶ 1} Appellant, Raymond W. Kelley ("appellant"), filed this appeal seeking reversal of six convictions of gross sexual imposition and reversal of the trial court's determination that he is a sexual predator. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellant married Yolanda Jackson ("Jackson") some time in 1993 or 1994. Tr. at 103. Jackson had custody of her two daughters from a previous marriage, A1 and A2.[1] Their father, Jeff Walker ("Walker") had visitation rights with A1 and A2 on weekends and for four weeks in the summer. Appellant had what was described as a close relationship with the two — they engaged in many family activities together, and referred to him as "Dad."
 {¶ 3} A1 was born on January 10, 1992, and was 13 years old at the time of trial. A1 testified that when she was eight or nine years old, appellant "started touching me in places, in my private places." (Tr. at 21.) She further stated, "I remember it was just sometimes he would play in my hair and drop down and start touching me." (Tr. at 22.) She described the action as rubbing her behind and vagina, over her clothes, for around five minutes at a time. (Tr. at 29, 30.) A1 could not remember the precise details of exactly when this began occurring, but said it occurred as often as three times a week until she was ten or eleven years old. (Tr. at 24.) She also described a time when, while living on Oak Bend in Canal Winchester, appellant took down his pants and had her feel his penis. (Tr. at 31.)
 {¶ 4} A2 was born on May 9, 1989, and was 16 years old at the time of trial. She testified that when she was eight or nine years old, and the family was living in a house on County Line Road in Westerville, appellant began molesting her. She said the first time this occurred, appellant bribed her with candy to sit on his lap. While she was sitting on his lap, appellant exposed his penis and had her touch it. When she objected, he told her he wanted her to know what it looked like, and that she should not touch it any more. (Tr. at 59.)
 {¶ 5} She then testified to a number of times when she said appellant rubbed her vagina, over her clothes. She also testified about an incident in which appellant pulled her into bed, removed both of their clothes, and touched her behind, vagina, and breasts; another incident in which appellant rubbed her breast over her clothes; and yet another incident in which he put his hand under her clothes and attempted to penetrate her vagina with his finger. (Tr. at 66-70.)
 {¶ 6} Both A1 and A2 testified that they did not report this abuse to anyone because they were afraid the family would be broken up if they did. Eventually, A2 reported what had happened to Walker's girlfriend Kim during one of the periods when she was visiting Walker.
 {¶ 7} Even after the abuse, A1 and A2 remained on good terms with appellant. Testimony was offered regarding times when the girls would see appellant at community events and would be affectionate with him at those times. (Tr. at 112, 122.) A1 and A2 would also call appellant at the radio station where he was working, referring to him as their father when they did. (Tr. at 124, 152.)
 {¶ 8} Appellant was initially indicted on 12 counts of gross sexual imposition in violation of R.C. 2907.05. A1 was the alleged victim on all 12 counts. Counts seven through twelve alleged the use of force, and alleged that the offenses occurred between May 19, 1997 and May 19, 2001. Counts one through six alleged that the time period during which the offenses occurred was between February 1, 2000 and February 1, 2002. Counts one through three alleged that the victim was between eight and ten years old, while counts four through six alleged that the victim was between eight and twelve years old.
 {¶ 9} At the conclusion of A1's testimony, counts four through six and ten through twelve were amended to name A2 as the victim. At the conclusion of the state's case, counts seven through twelve (the counts alleging use of force) were dismissed pursuant to Crim. R. 29.
 {¶ 10} The jury returned guilty verdicts on the remaining six counts. The trial court then held a sex offender classification hearing and adjudicated appellant as a sexual predator subject to lifetime reporting requirements. The court then sentenced appellant to three years of incarceration on each of the first three counts to be served concurrently with each other, two years of incarceration on each of counts four through six to be served concurrently with each other, but consecutive to the sentence on counts one through three, for a total sentence of five years.
 {¶ 11} Appellant filed this appeal alleging four assignments of error:
 First Assignment of Error: The evidence was legally insufficient to support appellant's conviction on counts one through three. Second Assignment of Error: The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29. Third Assignment of Error: Appellant's convictions were against the manifest weight of the evidence. Fourth Assignment of Error: The evidence before the court was legally insufficient to establish that appellant was a sexual predator, subject to the lifetime registration and community notification provisions of Chapter 2950 of the Ohio Revised Code.
 {¶ 12} Appellant's first three assignments of error are interrelated and will be treated together. As set forth in State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, when reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus. See also, Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 13} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 14} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. SeeState v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra at 387. When reviewing a trial court's denial of a motion for acquittal under Crim. R. 29, appellate courts apply the same standard as that which applies to claims regarding sufficiency of the evidence. Id. at 386.
 {¶ 15} Appellant's argument with respect to sufficiency of the evidence relates only to counts one through three of the indictment. All of the counts alleged violations of R.C. 2907.05(A)(4), which provides that:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following apply:
 * * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
 {¶ 16} Appellant does not argue that the State failed to prove any of the elements of the offense. Instead, appellant argues that the evidence was insufficient to establish that the incidents actually took place. Counts one through three were those counts in which A1 was the alleged victim. Appellant argues that A1 gave only general testimony regarding the incidents involving her, could not relate any of the events to any particular time or location, and could not state with certainty how many times the incidents had taken place. Appellant further argues that inconsistencies between A1's testimony and statements she made to investigators on the subjects of whether appellant ever spanked her or ever removed any of his clothes with her call her credibility into question.
 {¶ 17} Having reviewed the evidence, we cannot say that a reasonable trier of fact could not have found appellant guilty of gross sexual imposition against A1 beyond a reasonable doubt. A1 was unable to remember a number of specific details, such as whether any incidents occurred while the family lived on County Line Road, the specific number of times these incidents occurred, or what time of day the incidents occurred. However, she was able to specifically identify the family residence at Little Turtle as a place where some incidents occurred. (Tr. at 24-25.) She was also clear that there were multiple instances of appellant touching her beginning when she was almost nine years old and ending when she was almost eleven years old. A1 testified that these incidents would occur as often as three times per week for periods of time with breaks in between. (Tr. at 24.) Any questions about the consistency and credibility of A1's testimony were within the province of the jury to decide.
 {¶ 18} For the same reasons, we cannot say the trial court erred when it failed to grant appellant's motion for acquittal as to counts one through three. As for the motion for acquittal as to counts four through six, which alleged that A2 was the victim, we cannot say that reasonable minds could not have concluded that appellant was guilty beyond a reasonable doubt. A2's testimony included a greater number of specific details regarding the incidents, including that separate incidents occurred while the family lived on County Line Road, on Wintersong Lane, and on Oak Bend Boulevard. As with A1's testimony, any questions about consistency and credibility were within the province of the jury to decide.
 {¶ 19} In arguing that the convictions were against the manifest weight of the evidence, appellant argues that the evidence showed that A1 and A2 were motivated to fabricate charges against appellant because he disciplined them too severely, that Walker put them up to making the charges because he wanted to gain custody in order to avoid paying child support, and that their continuing affection for appellant is inconsistent with their claims that appellant sexually abused them. Both A1 and A2 testified that appellant and Jackson were stricter with them than Walker was, but neither expressed any animosity regarding that fact. Neither of the girls had seen Walker in the three years preceding trial, which would appear to negate any claim that the charges were part of an ongoing battle over custody. Nor can we say that A1 and A2's continuing affection for appellant is so inconsistent with their claim that appellant sexually abused them as to require a finding that appellant's convictions were against the manifest weight of the evidence. Having considered the record in its entirety, we cannot say that the jury lost its way in convicting appellant.
 {¶ 20} Consequently, appellant's first, second, and third assignments of error are overruled.
 {¶ 21} In his fourth assignment of error, appellant argues that the evidence before the court was legally insufficient to support the court's adjudication of appellant as a sexual predator subject to lifetime reporting and community notification requirements. Sexual predator proceedings are civil in nature, and as with any civil proceeding, we are required to presume the findings of the trier of fact are correct. See State v. McCoffin (Dec. 21, 2000), Franklin App. No. 00AP-468. R.C. 2950.01(E)(1) defines a sexual predator as a person who "has been convicted of or pleaded guilty to committing a sexually oriented offense * * * and is likely to engage in the future in one or more sexually oriented offenses." A finding that a person is a sexual predator must be made based on clear and convincing evidence. R.C. 2950.09(B)(4).
 {¶ 22} R.C. 2950.09(B)(3)(a) through (j) lists ten factors to be considered when evaluating whether a person should be found to be a sexual predator:
 (a) The offender's * * * age;
 (b) The offender's * * * prior criminal * * * record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed * * *;
 (d) Whether the sexually oriented offense for which sentence is to be imposed * * * involved multiple victims;
 (e) Whether the offender * * * used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f. If the offender * * * previously has been convicted of or pleaded guilty to * * * a criminal offense, whether the offender * * * completed any sentence * * * imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender * * *;
 (h) The nature of the offender's * * * sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender * * *, during the commission of the sexually oriented offense for which sentence is to be imposed * * * displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's * * * conduct.
 {¶ 23} There is no requisite number of these factors that must apply before a trial court may find an offender is a sexual predator.State v. McComas, Franklin App. No. 05AP-134, 2006-Ohio-380. The court "may classify an offender as a sexual predator even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually oriented offense." State v.Hardie (2001), 141 Ohio App.3d 1, 5, 2000-Ohio-2044, 749 N.E.2d 792.
 {¶ 24} In this case, the factors the trial court relied on were the fact that there was two victims, that both victims were very young when the offenses occurred, and the offenses were part of a pattern of abuse that occurred over an extended period of time. Having reviewed the record, we agree with the trial court that these factors demonstrate by clear and convincing evidence that appellant is likely to commit additional sexually oriented offenses in the future. Consequently, appellant's fourth assignment of error is overruled.
 {¶ 25} Having overruled appellant's four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
KLATT, P.J., and TRAVIS, J., concur.
[1] We use these designations in recognition of the privacy interests of the minors.