[Cite as *State v. Allen*, 2025-Ohio-4727.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

    Plaintiff-Appellee,                          :

                                        No. 24AP-34
v.                                                     :       (C.P.C. No. 22CR-227)

John M. Allen,                                         :       (REGULAR CALENDAR)

    Defendant-Appellant.                         :

---

D E C I S I O N

Rendered on October 14, 2025

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Michael A. Walsh*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, John M. Allen ("appellant" or "Allen"), appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of three counts of rape, in violation of R.C. 2907.02, all first-degree felonies, one count of sexual battery, in violation of R.C. 2907.03, a third-degree felony, and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a third-degree felony. For the reasons that follow, we affirm.

**I. Facts and Procedural History**

{¶ 2} On January 21, 2022, appellant was indicted on five counts of rape, in violation of R.C. 2907.02, all first-degree felonies, three counts of sexual battery, in violation of R.C. 2907.03, all third-degree felonies, and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a third-degree felony. Counts 1 and 2 alleged

rapes against De.H., a minor; Counts 3 through 8 alleged rapes and sexual batteries against Da.H., a minor, and Count 9 alleged gross sexual imposition against J.N., a minor. Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 3}   On November 27, 2023, a jury trial commenced. Prior to opening statements, the plaintiff-appellee, State of Ohio, without objection, moved to amend Count 2 of the indictment to modify the dates listed, and the trial court granted the amendment. At trial, the following evidence was adduced.

{¶ 4}   The state called A.H., the mother of victims Da.H. and De.H. as its first witness. A.H. testified that her sister, Alecia, was appellant's wife. A.H. has two daughters: Da.H. and De.H. Da.H. was born in November, 2000. De.H. was born in November, 2010.

{¶ 5}   When Da.H. was 13 years old, A.H., her daughter, and the Allens lived in Franklin County, Ohio. During this time, Da.H. would hang out with Allen's daughter D.A. On occasion, Da.H. would spend the night at Allen's house. After De.H. was born, Allen and Alecia both became "very involved" in the lives of Da.H. and De.H., helping out with childcare.

{¶ 6}   When De.H. was aged seven, eight, and nine, A.H. and her daughters lived across the street from the Allens. De.H. would go over to the Allen's house and spend the night. *Id.*

{¶ 7}   During the holidays in 2020, A.H. learned appellant sexually assaulted Da.H. when she was younger. A.H. testified that Da.H. "did not want to go into detail with" A.H., but did speak with a responding officer about it. A.H. learned that appellant "sexually assaulted [Da.H.] but [had] not penetrated her." (Nov. 28, 2023 Tr. Vol. 2 at 43-44.) A.H. confronted appellant who denied doing anything inappropriate with Da.H.

{¶ 8}   A.H. also spoke with De.H., who denied that anything happened to her. Despite initially denying anything had happened to her at the hands of appellant, three or four months later, De.H. disclosed to A.H. that appellant had also sexually assaulted her. After this disclosure, A.H. called the police and drove De.H. to Nationwide Children's Hospital.

{¶ 9}   The state called Da.H. as its next witness. Da.H. testified that as a child, she spent time with her cousin, D.A. She would spend the night at D.A.'s house, sleeping either

on the floor or in a trundle bed in D.A.'s room.  D.A.'s parents, appellant, and Alecia slept in a different room across the hall.

{¶ 10}  At age 13, Da.H. testified that during some of her sleepovers, she would wake up "in the middle of the night to [appellant] licking [her] vagina."  *Id.* at 72, 75, 89.  She testified that the sensation in her vagina woke her up.  She wore underwear when going to bed, but it was (involuntarily) removed when she woke up.  Initially, Da.H. did not say anything or resist, figuring if she "just ignored it it would go away."  *Id.* at 73.  She eventually began saying "stop" and pushing appellant away, and eventually appellant would comply.  *Id.*  After stopping, appellant would get up, leave the room, and shut the door.  Da.H. did not recall how many times Allen did this to her, but knew it was more than twice.

{¶ 11}  Da.H. testified that she knew appellant was the perpetrator of the foregoing acts both because she could see him and because of his distinguishing smell from working at McDonald's.  She further testified she did not know of any other men living at appellant's house when these acts occurred.

{¶ 12}  Da.H. did not tell anyone about the rapes out of embarrassment and the hope that, if she kept quiet, it would stop happening.  She also feared how speaking out would impact her life and family.  Eventually, when she was 17 or 18, Da.H. told a friend what happened.  Her mother, A.H., learned what happened from that friend's family.  When A.H. approached Da.H. with the information, Da.H. confirmed appellant had raped her, but refused to tell A.H. more because she found it "very embarrassing."  *Id.* at 76.  Da.H. and De.H. never discussed specifics of what happened with each other.  *Id.* at 79-80, 89-90.

{¶ 13}  On cross-examination, Da.H. testified that appellant's misconduct began when she was seven years old.  *Id.* at 89.  On re-direct, she explained that when she was younger, Allen bent her over a chair and, a couple minutes later, something landed on her butt.  *Id.* at 91.

{¶ 14}  The state called De.H. as its next witness.  At the time of the trial, De.H. was 12 years old.  One night, when De.H. was nine years old, she was staying at the Allens' house.  Appellant called her into his bedroom.  De.H. came in and sat down on a chair.  She then moved from the chair to appellant's, at which point appellant pulled down her pants.  Appellant then engaged De.H. in vaginal intercourse.  Appellant also engaged De.H. in vaginal intercourse when she was seven and eight years old.

{¶ 15} De.H. testified that when Da.H. told their mother, A.H., about appellant's behavior toward Da.H., De.H. said nothing happened to her, feeling "scared to tell the truth." (Tr. Vol. 2 at 119.) Eventually, when De.H. was 10 years old in April, 2021, she told A.H. what had happened to her. De.H. only disclosed the information after her emotional response to a comment about Da.H.'s allegations clued A.H. in that something had happened to De.H. as well. De.H. testified that after her disclosure, A.H. drove De.H. to Nationwide Children's Hospital for an interview and examination.

{¶ 16} Following De.H.'s testimony, the state called Carrie Nease, a nurse practitioner at Nationwide Children's Hospital. The court recognized Nease as an expert in child sexual assault examination without objection.

{¶ 17} Nease testified that on April 22, 2021, she conducted a physical examination of De.H. and prepared a report based on that examination. Nease found nothing abnormal about De.H. She explained, however, that "[m]ore than 90 percent of girls with substantiated cases of sexual abuse have a normal or a nonspecific physical examination. And so my exam findings cannot rule out the possibility of sexual abuse." *Id*. at 156.

{¶ 18} For its next witness, the state called Kerri Wilkinson, a social worker who had previously worked at Nationwide Children's Hospital as a forensic interviewer. The court recognized Wilkinson as an expert in forensic interviewing without objection.

{¶ 19} Wilkinson testified that on April 22, 2021, she conducted a recorded forensic interview with De.H. She prepared a report following the interview. The interview was recorded by camera, and the state played the recording for the jury.

{¶ 20} The state called C.H., the mother of victim J.N., as its next witness. C.H. testified that in 2011 or 2012, the Allens moved into a townhome next door to C.H. and her children. C.H. became friends with Alecia, and C.H.'s daughter, J.N., who was around seven years old at the time, became friends with D.A. J.N. had around three sleepovers with D.A. at the Allen's house.

{¶ 21} One day, appellant came over to C.H.'s house. He saw J.N. and called for her, and C.H. noticed J.N. hesitate. Appellant then picked up J.N. and put her on his lap. C.H. saw her squirming, trying to get off. C.H. removed J.N. from appellant's lap, sent her away, and asked appellant to leave.

{¶ 22} In 2012, C.H. learned that, when J.N. went over to play with D.A., appellant touched her over and under her clothing on both her breasts and vaginal area. C.H. called the police. Child Protective Services got involved, and C.H. was referred to the Nationwide Children's Hospital Child Advocacy Center. The case went inactive until other, unrelated allegations against appellant came to light. After the case was re-activated, J.N. went through another forensic interview, but C.H. did not recall her receiving a new examination.

{¶ 23} Following C.H.'s testimony, J.N. was called to testify. J.N. testified that she was friends with D.A., and they would play and have sleepovers. D.A. lived next door to J.N. with D.A.'s parents, Alecia and appellant.

{¶ 24} During her first sleepover with D.A., when she was seven or eight years old, J.N. awoke to the feeling of someone pulling her outer pants down and touching her vagina through her underwear. She heard a male voice that she recognized as appellant tell her "something along the lines of, '[o]h, this is just a dream,' or '[g]o back to sleep.' " (Nov. 29, 2023 Tr. Vol. 3 at 250, 252-253.) J.N. knew the only male in the house at the time was appellant.

{¶ 25} J.N. further testified that another time, J.N. and D.A. were on D.A.'s parents' bed playing on an iPad. J.N. saw Allen's car pull up outside, got "a bad feeling," and decided to leave. *Id.* at 254. As she was about to walk out the door, appellant stopped her. They "somehow [] ended up on the floor. And he pulled his pants down" to his thighs, keeping his underwear on, and began humping J.N. *Id.* at 254-257. Appellant eventually stopped, told J.N. not to say anything, and sent her home.

{¶ 26} J.N. testified that she told her grandmother what had happened. Her grandmother told C.H.

{¶ 27} The state next called Maddison Wagner, a nurse practitioner who previously worked at Nationwide Children's Hospital in the Child Advocacy Center. The court recognized her as an expert in child sexual assault examination without objection. On August 27, 2021, Wagner performed an examination of J.N. J.N. declined to have Wagner conduct an anogenital exam. The examination was deemed normal, but according to Wagner, who read from her report, "a normal exam does not exclude the possibility of sexual abuse[.]" (Tr. at 314.)

{¶ 28} Finally, the state called as its last witness Michelle Hasenkamp, who worked at Nationwide Children's Hospital in the Child Advocacy Center, as an expert in forensic interviewing. Hasenkamp testified that on August 27, 2021 she interviewed J.N. A video recording of the interview was played in court for the jury.

{¶ 29} After the state rested its case, the court admitted the state's four exhibits without objection, subject to agreed-upon redactions. Defense counsel moved for acquittal under Crim.R. 29, and the court denied the motion.

{¶ 30} Appellant presented testimony from one witness, his wife Alecia. Alecia testified that appellant worked at McDonald's as an assistant manager, where he had worked for 30-some years. He worked evenings, leaving the house around 1:30 p.m. and returning home between 1:00 a.m. and 3:00 a.m.

{¶ 31} Alecia testified that she never left Da.H. alone at home with appellant and never saw anything inappropriate happen between the two. She did not recall appellant ever leaving their bedroom to go into D.A.'s bedroom when D.A. had a sleepover.

{¶ 32} Alecia recalled that De.H. would not come over to their place for most of 2017 due to A.H.'s concerns about their apartment complex. Nor could De.H. visit from November, 2017 through March, 2018 because during that time the Allens lived in Lancaster with Alecia's cousin. However, she testified that De.H. would visit frequently once the Allens moved into a new place in March, 2018. Alecia did not recall De.H. being at the Allen's house without either herself or her mother being present. She testified that appellant was never alone with De.H.

{¶ 33} Finally, Alecia testified that J.N. came over with C.H. to hang out at the Allen's house. J.N. also slept over with D.A., but only once. She testified that appellant was likely not home during that sleepover and was rarely present when J.N. was around. On cross-examination, however, Alecia acknowledged that J.N. could have been in the Allen's house when Alecia was at work.

{¶ 34} The defense rested after Alecia's testimony. After the defense rested its case, defense counsel renewed his motion for acquittal under Crim.R. 29, which the court took under advisement. Following closing arguments, the court admitted the state's redacted exhibits without objection and denied appellant's renewed motion for acquittal.

{¶ 35} At the conclusion of the trial, the jury found appellant guilty of two counts of rape against De.H. (Counts 1 and 2 of the indictment); one count of rape against Da.H. (Count 3 of the indictment); one count of sexual battery against Da.H. (Count 4 of the indictment); and one count of gross sexual imposition against J.N. (Count 9 of the indictment). The jury acquitted appellant of Counts 5, 6, 7, and 8 of the indictment.

{¶ 36} At sentencing, the parties agreed that Counts 3 and 4 merged for purposes of sentencing. The court imposed a sentence of 15 years to life on Count 1 and 15 years to life on Count 2 to run concurrently; 10 years on Count 3 to run consecutively; and 5 years on Count 9 to run consecutively, for an aggregate sentence of 30 years to life imprisonment. (Feb. 12, 2024 Am. Jgmt. Entry.)

{¶ 37} This timely appeal followed.

## II. Assignments of Error

{¶ 38} Appellant asserts two assignments of error for our review:

[1.] The trial court erred when it denied Mr. John Allen['s] [Crim.R.] 29 Motion for Acquittal.

[2.] The verdicts of guilt as to the convictions of Rape, Sexual Battery, and Gross Sexual Imposition [are against the manifest weight of the evidence].

(Sic passim.)

## III. Law and Analysis

{¶ 39} In his first assignment of error, appellant argues that the trial court erred when it denied his motion for acquittal. In his second assignment of error, appellant argues that the verdicts are against the manifest weight of the evidence. We find no merit in either of appellant's contentions.

### A. Standards of Review

{¶ 40} Crim.R. 29(A) provides, in relevant part, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). Whether a conviction is supported by legally sufficient evidence is a question of law. *State v. Flood*, 2019-Ohio-2524, ¶ 16 (10th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 41} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 2010-Ohio-1881, ¶ 36 (10th Dist.,), citing *Thompkins* at 386. In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court will not disturb the jury's verdict unless the court finds "that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 2001-Ohio-4, 90 Ohio St.3d 460, 484, citing *Jenks* at 273.

{¶ 42} In a review for sufficiency of the evidence, we do not engage in a determination of the witnesses' credibility. *State v. Woodward*, 2004-Ohio-4418, ¶ 16 (10th Dist.,), citing *State v. Goff*, 1998-Ohio-369, 82 Ohio St.3d 123, 139. Rather, "we essentially assume the state's witnesses testified truthfully and determine whether the testimony satisfies each element of the offense." *Id.*, citing *State v. Gore*, 131 Ohio App.3d 197, 200-201 (7th Dist. 1999). Further, the testimony of one witness, if believed by the jury, is sufficient to support a conviction. *State v. Winston*, 2018-Ohio-2525, ¶ 21 (10th Dist.), citing *State v. Strong*, 2011-Ohio-1024, ¶ 42 (10th Dist.).

{¶ 43} Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). This discretionary authority " 'should be exercised

only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 44} "[A] prerequisite for any reversal on manifest weight grounds is conflicting evidence, more specifically, evidence weighing heavily against the conviction, such that the jury clearly lost its way and created such a manifest miscarriage of justice." *State v. Tate*, 2014-Ohio-3667, ¶ 20, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983) (internal quotation marks omitted). Thus, manifest weight review is not a pure balancing test. Rather, the standard requires that the appellate court review the record for conflicting evidence. *Tate* at ¶ 20. A court may reverse on manifest weight only when the conflicting evidence weighs so heavily against the conviction that the conflicting evidence shows the finder of fact lost its way. *Id.*; *see also Thompkins* at 387, quoting *Martin* at 175.

{¶ 45} Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, . . . such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.), quoting *State v. Nivens*, 1996 Ohio App. LEXIS *7 (10th Dist. May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 46} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 2005-Ohio-449, ¶ 38 (10th Dist.) (reversed and remanded in part on other grounds). Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 2006-Ohio-2070, ¶ 19 (10th Dist.). This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 2019-Ohio-1862, ¶ 32 (10th Dist.), quoting *State v. Cattledge*, 2010-Ohio-4953, ¶ 6 (10th Dist.), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 47} Against the foregoing standards of review, we now turn to appellant's assignments of error. In his first assignment of error, appellant argues that the trial court

erred when it denied his motion for acquittal because the evidence was insufficient to support his convictions. We disagree.

### B. Rape Convictions

{¶ 48} Appellant was convicted for three counts of rape, in violation of R.C. 2907.02: two counts against De.H (vaginal intercourse), and one count against Da.H (rape by cunnilingus). At all times relevant to the charges of rape in this case, R.C. 2907.02 provided, in pertinent part:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> . . .
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>
> . . .
>
> (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

R.C. 2907.02(A)(1)(b) and (2) (eff. Mar. 22, 2020, Mar. 22, 2019, and Jan. 1, 2008).

### 1. Rapes Against De.H.

{¶ 49} Regarding the two counts of rape against De.H. for which appellant was charged, he does not challenge the sufficiency of the evidence regarding De.H.'s age or lack of marriage to her. He asserts, however, that the evidence was insufficient to show sexual conduct occurred because of the lack of physical evidence. We disagree.

{¶ 50} "Sexual conduct" is defined as:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶ 51} It is well-settled that physical evidence is not required to prove sexual conduct; indeed, "it is well-established that a victim's testimony alone, if believed, is sufficient to support a conviction for rape and corroborating physical evidence is not required." *State v. Hardy*, 2024-Ohio-5926, ¶ 43 (10th Dist.) (citing *State v. K.A.C.*, 2024-Ohio-1139, ¶ 55 (10th Dist.), *State v. O.E.P.T.*, 2023-Ohio-2035, ¶ 4 (10th Dist.), and *State v. Perpignand*, 2021-Ohio-4277, ¶ 39 (10th Dist.).

{¶ 52} De.H. provided testimony supporting both counts of rape. As to Count 1, De.H. recalled that, when she was nine years old, appellant called her into his bedroom. She testified he then put his penis inside her vagina and engaged in vaginal intercourse. And as to Count 2, De.H. testified that appellant engaged her in vaginal intercourse when she was seven or eight years old. Furthermore, her testimony was consistent with her disclosures to the forensic interviewer. (*See* Ex. A1 at 29).

{¶ 53} The foregoing evidence is entirely consistent with a jury finding that appellant had committed two counts of rape against De.H. Thus, there was sufficient evidence to support appellant's conviction for same, and the trial court did not err by denying appellant's motions for acquittal made pursuant to Crim.R. 29.

### 2. Rape Against Da.H.

{¶ 54} Appellant also asserts the state failed to present evidence sufficient to support a conviction for rape by cunnilingus against Da.H. Specifically, he argues that he was not sufficiently identified by Da.H. and that the state failed to present sufficient evidence to meet the force element set forth in R.C. 2907.02(A)(2). We disagree.

{¶ 55} R.C. 2907.01 does not define "cunnilingus"; however, the Supreme Court of Ohio has explained "the act of cunnilingus is completed by the placing of one's mouth on the female's genitals." *State v. Lynch*, 2003-Ohio-2284, ¶ 86.

{¶ 56} Da.H. testified that when she was 13 years old, she would go over to D.A.'s house and, occasionally, spend the night. She further testified that during some of the sleepovers, she woke up to the feeling of appellant "licking [her] vagina." (Tr. Vol. 2 at 72.) Da.H. testified definitively that it was appellant who engaged in licking her. She identified appellant by both his smell (he smelled like his work) and by seeing him using light coming from the hallway. Further, Da.H. testified she was unaware of any other men living in the

household at the time. Thus, the state presented sufficient evidence that appellant performed cunnilingus on Da.H.

{¶ 57} Regarding the element of force, we note that "[f]orce is generally defined as 'any violence, compulsion, or constraint physically exerted by any means upon a person or thing.' " *State v. H.H.*, 2011-Ohio-6660, ¶ 11 (10th Dist.) (quoting R.C. 2901.01(A)(1)). "The force and violence necessary to commit the crime of rape depends upon the age, size[,] and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56 (1988), paragraph one of the syllabus. "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.' " *Id.* at 59, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154 (8th Dist. 1985).

{¶ 58} Da.H. testified that, on at least one occasion, she began telling appellant to stop and attempted to push him away, but that initially, he did not stop. Once appellant began resisting Da.H.'s attempts to stop him, even for a brief period, he was overcoming Da.H.'s will through forcible submission. This sufficiently establishes the force element of forcible rape. Da.H. further testified that when appellant was raping her, she was "stuck," so she did not fight back. (Tr. Vol. 2 at 94-95.) This testimony demonstrates that her " 'will was overcome by fear or duress[.]' " *Eskridge*, 38 Ohio St.3d at 59, quoting *Fowler*, 27 Ohio App.3d at 154. Da.H.'s belief that she could not resist also is sufficient to meet the force element.

{¶ 59} Finally, appellant's challenge to the sufficiency of the evidence relating to the credibility of Da.H. is wholly irrelevant to a sufficiency analysis. This is so because "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 2009-Ohio-754, ¶ 4 (10th Dist.).

{¶ 60} In short, Da.H.'s testimony, standing alone, provides sufficient evidence of forcible rape by cunnilingus, and the trial court did not err in overruling appellant's Crim.R. 29 motion relating to this count of the indictment.

**C. Sexual Battery Conviction**

{¶ 61} Next, we turn to appellant's conviction for one count of sexual battery against Da.H, in violation of R.C. 2907.03 (Count 4). At the time of the incident charged in Count 4 of the indictment, R.C. 2907.03 provided, in relevant part:

> (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
>
> . . .
>
> (3) The offender knows that the other person submits because the other person is unaware that the act is being committed.

R.C. 2907.03(A)(3) (eff. Apr. 7, 2009).

{¶ 62} Regarding this count, appellant argues the evidence was insufficient to support a conviction because "there was no evidence presented to show that [appellant] knew that the victim was not awake otherwise unable to consent." (Brief of Appellant at 17-18.) This argument is meritless.

{¶ 63} At trial, Da.H. testified that while on sleepovers at appellant's house, on several occasions she "remember[ed] being woken up in the middle of the night to [appellant] licking [her] vagina." (Tr. at 72; *see also id*. at 82, 87.) She also testified that it was the sensation in her vagina which woke her up. Additionally, Da.H. testified that she was lying on either the floor or a trundle bed during a sleepover in a dark room next to his sleeping daughter when the conduct by appellant occurred. Da.H. also testified that although she initially did not say anything to appellant when he engaged in the conduct, she eventually began saying "stop" and pushing appellant away, and eventually appellant would comply. *Id*. at 72.

{¶ 64} From the foregoing testimony, the jury could reasonably infer that appellant knew Da.H. was asleep when he began engaging her in unwanted sexual conduct. Further, from Da.H.'s testimony that on some occasions she would tell appellant to stop and push him away, the jury could reasonably infer that appellant knew Da.H. only "permitted" him to initiate sexual conduct because she was asleep.

{¶ 65} Therefore, the state presented sufficient evidence to support a conviction of sexual battery against Da.H, in violation of R.C. 2907.03(A)(3), and the trial court did not err in denying appellant's Crim.R. 29 motion with regard to Count 4.

### D. Gross Sexual Imposition Conviction

{¶ 66} Finally, we turn to appellant's conviction for one count of gross sexual imposition against J.N., in violation of R.C. 2907.05 (Count 9). At the time of the incident charged in Count 9 of the indictment, R.C. 2907.05 provided, in relevant part:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> . . .
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

R.C. 2907.05(A)(4) (eff. Jan. 1, 2008). Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast." R.C. 2907.01(B). The sexual contact element also requires the defendant act with "the purpose of sexually arousing or gratifying" either himself or the victim.

{¶ 67} Regarding this count, appellant argues the evidence was insufficient to support a conviction because the state did not present any physical evidence, corroborative evidence, or medical evidence. This argument has no merit.

{¶ 68} First, in a review for sufficiency of the evidence, we do not engage in a weighing of the evidence. *State v. Kelley*, 2006-Ohio-6782, ¶ 13 (10th Dist.) Rather, as noted above, "we essentially assume the state's witnesses testified truthfully and determine whether the testimony satisfies each element of the offense." *State v. Woodward*, 2004-Ohio-4418, ¶ 16, citing *State v. Gore*, 131 Ohio App.3d 197, 200-201 (7th Dist. 1999). Furthermore, the state was not required to present any corroborative, physical, and/or medical evidence to establish evidence of each element of the crime of gross sexual imposition. *See Hardy*, 2024-Ohio-5926, at ¶ 43 (10th Dist.) ("it is well-established that a victim's testimony alone, if believed, is sufficient to support a conviction for rape and corroborating physical evidence is not required"). It is well-settled that " '[t]he testimony of one witness, if believed by the jury, is enough to support a conviction.' " *State v. Steward*, 2019-Ohio-5258, ¶ 17 (10th Dist.), quoting *State v. Patterson*, 2016-Ohio-7130, ¶ 33 (10th

Dist.); *State v. Winston*, 2018-Ohio-2525, ¶ 21 (10th Dist.) (holding same), citing *State v. Strong*, 2011-Ohio-1024, ¶ 42 (10th Dist.) (holding same).

{¶ 69} In this case, the state presented sufficient evidence for each element of gross sexual imposition under R.C. 2907.05(A)(4). First, regarding the age and marital status elements, J.N. testified that she was younger than 13 years old when the conduct took place, and there is no evidence suggesting that J.N. was the spouse of appellant.

{¶ 70} As for the sexual contact element, J.N. identified appellant as the perpetrator by testifying that she recognized his voice as he was touching her and knew that he was the only male in the household at the time of the offense. She further testified that she awoke to the feeling of someone fondling her vagina through her underwear, which constitutes a touching of her pubic region. *State v. Turner*, 2004-Ohio-6609, ¶ 14 (10th Dist.) (touching victim's vaginal area over her clothes was sufficient to find sexual contact); *see also State v. Boyer*, 2006-Ohio-6992, ¶ 25 (10th Dist.) (in context of a sexual conduct analysis pertaining to a rape by cunnilingus charge, finding no difference between contacting a victim's vagina directly and contacting it through underwear).

{¶ 71} Regarding the purpose element required to show gross sexual imposition, "[w]hether touching is done for the purpose of sexual gratification is a 'question of fact to be inferred from the type, nature, and circumstances surrounding the contact.' " *State v. Daniels*, 2003-Ohio-1545, ¶ 10 (1st Dist.), quoting *In re Anderson*, 116 Ohio App.3d 441, 443-444 (12th Dist. 1996); *State v. Mundy*, 99 Ohio App.3d 275, 289 (2d Dist. 1994). "A defendant's purpose to attain sexual arousal or gratification can be inferred from a 'touching that a reasonable person would perceive as sexually stimulating' " or gratifying. *State v. Medrano*, 2012-Ohio-3972, ¶ 7 (10th Dist.), quoting *State v. Jackson*, 2001 Ohio App. LEXIS, *16 (10th Dist. Feb. 20, 2001); *see also State v. Astley*, 36 Ohio App.3d 247, 250 (10th Dist. 1987).

{¶ 72} We find that a reasonable person would perceive touching a female's vagina through her underwear to be sexually stimulating or gratifying. Further, while appellant's specific act of touching the vagina of a sleeping eight-year-old girl through her underwear was despicable, a reasonable person would perceive someone committing this act as seeking sexual stimulation or gratification. Thus, the state presented sufficient evidence of each component of the sexual contact element.

{¶ 73} In sum, the state presented sufficient evidence to support a conviction of gross sexual imposition against J.N., in violation of R.C. 2907.05(A)(4), and the trial court did not err in denying appellant's Crim.R. 29 motion with regard to Count 9.

{¶ 74} Therefore, based on all the foregoing, the state presented sufficient evidence of all elements of each of the crimes for which appellant was convicted. As such, the trial court did not err in denying appellant's Crim.R. 29 motion for acquittal. Accordingly, appellant's first assignment of error is overruled.

{¶ 75} In appellant's second assignment of error, he asserts that the jury lost its way by convicting him despite the state's failure to present sufficient evidence. First, we have already found that the state presented sufficient evidence of all elements of each of the crimes for which appellant was convicted. Furthermore, appellant has identified no conflicting evidence whatsoever. As discussed previously, "a prerequisite for any reversal on manifest weight grounds is conflicting evidence, more specifically, evidence weighing heavily against the conviction, such that the jury clearly lost its way and created such a manifest miscarriage of justice." (Further citations omitted.) *Tate*, 2014-Ohio-3667, at ¶ 20. Therefore, appellant's manifest weight argument is completely without merit.

{¶ 76} In sum, there is sufficient evidence to support appellant's convictions, and the trial court did not err in denying appellant's motion for acquittal made pursuant to Crim.R. 29. Furthermore, appellant's convictions are not against the manifest weight of the evidence because he has failed to demonstrate that the jury clearly lost its way and created such a manifest miscarriage of justice that his convictions must be reversed, and a new trial ordered.

{¶ 77} Accordingly, based on the foregoing, appellant's second assignment of error is overruled.

## IV. Disposition

{¶ 78} Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON, P.J., and DINGUS, J., concur.

————————————